J. D. VARNELL, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 58011, 58012. Promulgated May 31, 1933.

*Mabel Walker Willebrandt, Esq.*, and *William Montgomery Smith, Esq.*, for the petitioner.

*George D. Brabson, Esq.*, for the respondent.

OPINION.

GOODRICH: This is another case in which the question is, Who is the taxpayer? The income on which the tax is to be levied consists of the dividends paid upon the stock owned by petitioner's wife at the time of her death and outstanding in her name until, at the time of final settlement of her estate, more than seven years afterwards, it was surrendered and reissued equally to petitioner and his two daughters. Petitioner contends that there should be included in his income, not the full amount of the dividends as respondent has determined, but only one third thereof, and that the remainder should be divided between his daughters. The basis for his contention is his claim that he had given two thirds of the stock to his daughters and therefore, they being the owners of the property, the income arising from it by way of dividends belongs and is taxable to them. The issue which we must determine from the evidence before us is, therefore, whether petitioner's acts constituted a completed gift of a part of the stock to his daughters. We need not closely consider the situation prior to 1926, for it was only then that petitioner can claim to have made a gift to his daughters. Prior to that time he believed they were each entitled to a part of the estate by operation of law.

We are of opinion that the gift was not consummated prior to or during the taxable period here involved and, consequently, that the dividends paid on the stock were properly included by respondent in petitioner's income, the latter's division of them with his daughters being no more than a gift of income, which did not serve to relieve him of the tax on his receipt thereof.

Little citation is needed to accompany its statement, so well established is the rule respecting the ordinary requirements of a gift *inter vivos*. There must be (1) an intention on the part of the competent donor to give; (2) an acceptance by a competent donee; and (3) a transfer of title, accompanied by delivery amounting to a complete surrender by the donor of the domination and control of the property. *Edson* v. *Lucas*, 40 Fed. (2d) 398; (reversing *Margaret M. Edson*, 11 B.T.A. 621); *Mary Katherine Dulin*, 25 B.T.A. 1259; and cases there cited.

Here no question is raised concerning the competency of the parties and it is evident that the donees were willing to accept the gift. Nor do we doubt petitioner's honest intention to abide by his promise to

his daughters, but the fact remains that delivery of the property was not made until in 1931 when the stock was issued to and turned over to the donees. Meantime it remained within petitioner's possession and control and, as we see it, his statements to the donees amounted to no more than a promise to make a gift of the stock some time in the future. That promise he kept, and at that moment the gift was made, not before.

While the testimony is somewhat in conflict, we think this view adequately supported by statements of the witnesses respecting conversations with petitioner in 1926, after he learned he was the sole beneficiary of his wife's estate, which indicate that his intention was to give to his daughters at some time in the future when the estate should be distributed the interest he had promised to them and which he had previously assumed belonged to them. We gather from the testimony that petitioner and his daughters all recognized that something further remained to be done, when the administration of the estate should be finally settled, to complete the matter and that, meantime, the daughters, through the generosity of their father, were receiving the income from the stock which he had promised to give them but had not delivered. Those payments, made from petitioner's own bank account in which he deposited the dividends as received, we think can be regarded only as recurring gifts from his income, on the original receipt of which he is taxable.

Petitioner, on brief, calls attention to the fact that under the rule as so firmly restated in *Brewster* v. *Gage*, 280 U.S. 327, title to the stock did not vest in petitioner immediately upon the death of his wife, but only a right to receive his distributive share of it after completion of proper administration of his deceased wife's estate. It was a part of that right, not the stock itself, which he gave to his daughters, he argues, and thereafter he stood as a trustee of an oral trust to deliver the stock in accordance with that right. But the income arose on the stock itself, not on the right to receive it, and a gift of the right to receive the stock in the future, perhaps, does not carry with it ownership of the income arising in the interim. *R. C. Kuldell, Administrator*, 25 B.T.A. 800. Moreover, it matters little whether the promise was to give a part of the stock itself or to give a part of the right to receive the stock. The point is, there was no delivery. There is no affirmative act here to evidence a delivery, constructive or actual, of either the stock or the right to receive it in the future. There was no setting aside, earmarking or designating of the property or instruction to a third party, or acknowledgment of the receipt such as sometimes has been held to be the equivalent of a constructive delivery and the assumption of a trust sufficient to consummate a gift. *Blanche S. Ross*, 28 B.T.A. 39; *J. T. Hedrick*,

24 B.T.A. 444; *Earl F. Smith, Administrator*, 23 B.T.A. 278; reversed, 59 Fed. (2d) 533; *Kaufmann* v. *Commissioner*, 44 Fed. (2d) 144 (modifying *Karl J. Kaufmann, Administrator*, 15 B.T.A. 141).

On the contrary, there is evidence that petitioner retained control of the stock and the dividends. On one occasion, without the knowledge or consent of his daughters so far as appears, he left the dividends with the company as a loan, accepting a promissory note therefor, the proceeds of which he distributed upon payment during the next year. On other occasions he distributed, not the cash dividends paid, but securities which he purchased therewith. Whether such purchases were made with the knowledge and consent of his daughters, or wholly upon his own judgment as to what was best for them to have, does not appear. Clearly, such acts negative the claim that petitioner had relinquished complete control and domination of the property, an essential element to the consummation of a gift. Nor does the record disclose any acts of the daughters beyond the acceptance of the money turned over to them evidencing the assertion of a claim to an interest in the stock, or the right to receive it, such as would show that the parties regarded the transaction as fully closed.

We are not told why petitioner permitted the estate to lie dormant for so long before his final accounting and distribution. It is conceded that, under the Tennessee statutes, he was the sole beneficiary, as well as administrator. The record shows that there were few debts of the estate, and no property other than the stock. Petitioner might easily have made distribution to himself and transferred and delivered to his daughters such part of the stock as he wished to give them, and thus completed the gift. It may be, as respondent on brief suggests, that he was content to delay delivery of the stock for the reason that his daughters were young and unused to business affairs and, consequently, he deemed it desirable to retain control of the stock for their protection. It may be, as petitioner on brief suggests, that the delay was due entirely to the fact that petitioner was without experience in matters of estate administration and, since he sought no advice, was entirely ignorant of the legal requirements of the consummation of the gift he intended to make. Whatever the cause, and without doubting in the slightest the honesty of his intentions, we are forced to the conclusion that he has failed to turn that " square corner " demanded of one seeking to escape the incidence of a tax upon the receipt of income ostensibly his own, and hold that the dividends should be included in his income, for the reason that he failed to dispose of the property from which they arose.

*Judgment will be entered for the respondent.*